UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------ x
                                                       :
KEITH WATERS, *pro se*,                                :
                                                       :
                              Plaintiff,               :    **MEMORANDUM & ORDER**
                                                       :
               -against-                               :    07-CV-4753 (DLI)(LB)
                                                       :
NANCY T. SUNSHINE, Chief Clerk,                        :
DENNIS ALMOVODAR, Court Aide,                          :
JANE/JOHN DOE, Motion Clerk,                           :
                                                       :
                              Defendants.              :
------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Keith Waters, appearing *pro se*, brought this action under 42 U.S.C. § 1983 against various employees of the New York Supreme Court, Kings County including Nancy T. Sunshine, the County Clerk, Dennis Almovodar, a court aide, and an unnamed motion clerk. Plaintiff alleges that these individuals violated his constitutional right to access the court by failing to: (1) forward his substitution of counsel application and habeas petition to his attorney; (2) file his habeas petition and substitution of counsel application; and (3) forward his substitution of counsel application to a judge for consideration. All parties moved for summary judgment. For the reasons set forth more fully below, the court denies Plaintiff's motion in its entirety and grants Defendants' motion in its entirety.

Plaintiff cannot survive summary judgment because even assuming that Defendants engaged in the alleged misconduct, the undisputed evidence shows that Plaintiff had available remedies. Furthermore, there is no evidence suggesting that Defendants acted with the requisite intent or that Plaintiff suffered actual injury. Additionally, this Section 1983 suit cannot be sustained against Sunshine because it is undisputed that she was not personally involved with

any of the alleged events. Finally, under the principles of federalism and comity, the Eleventh Amendment, and Section 1983, the court cannot grant the declaratory relief that Plaintiff seeks.

I. **Background**

Plaintiff is currently in state custody at Coxsackie Correctional Facility following his May 1, 2006 conviction by a jury in Kings County Supreme Court for robbery in the first degree. He was arrested in September 2005 and has been incarcerated since. In December 2005, the state court appointed Ayisha Amjad of the Legal Aid Society of Brooklyn to represent him. Plaintiff claims that, on or about January 28, 2006, he filed a habeas petition with the Kings County Supreme Court. (Pl.'s Compl. at ¶ 32.) The return receipt indicates that Almovodar received the petition on behalf of the court. (*Id.*) According to Plaintiff, the Criminal Term Motion Department of the Brooklyn Supreme Court notified him on February 8, 2006 that his habeas petition had been forwarded to Amjad. (*Id.* at ¶ 33.) During a hearing held on March 2, 2006, Amjad, however, denied ever receiving the petition. (*Id.* at ¶ 34.) Records from the Criminal Term Motion Department show that it did not forward the petition to Amjad until April 7, 2006. (Aff. of James Imperatrice at ¶ 11, Ex. C.)

On March 21, 2006, Plaintiff filed an application to substitute counsel with the Kings County Supreme Court that Almovodar received on or about April 3, 2006. ((Pl.'s Compl. at ¶ 35, Ex. A-1.) Plaintiff alleges that upon receiving the application, the court staff failed to file or otherwise submit the application to the judge for consideration. (*Id.* at ¶ 36.) He also claims that Defendants did not forward his application to his counsel. Defendants submitted documents indicating that the court clerk forwarded the application to Amjad on April 4, 2006. (Aff. of James Imperatrice at ¶ 10, Ex. B.) In the application, Plaintiff alleged that Amjad "failed to properly investigate[,] notify[,] and consult with [him] regularly in the preparation of the

2

defense . . . [thus] [r]endering the representation less than meaningful." (Pl.'s Mem. of Law for Summ. J. at Ex. A-1.)

The state court did not consider this application until after his conviction when Plaintiff sought to vacate his conviction pursuant to CPL § 440.10. (Aff. of James Imperatrice at ¶ 13, Ex. E.) In this motion, Plaintiff argued that his sentence must be set aside because the trial court failed to consider his *pro se* motion to reassign counsel. (*Id*.) On October 13, 2006, the Kings County Supreme Court denied his motion as meritless noting that his complaints about Amjad were belied by Plaintiff's own correspondence in which he "thanks counsel with [sic] providing him with documents, comments on various documents sent to him by counsel and looks forward to a video conference." (*Id*. at Ex. E. at 3.) The court also found that his "counsel provided meaningful representation at trial" and noted that, other than his April 2, 2006 application, "there is no indication that defendant had any further conflict with counsel or that he attempted to bring his complaints to the court's attention." (*Id*.) The court dismissed Plaintiff's protest regarding the trial court's failure to address his motion by explaining that "even though it would have been better for the motion to have been brought to the [trial] court's attention, had it come before the court, it is clear that it would have been denied." (*Id*.) The Appellate Division, Second Department, denied Plaintiff's appeal of this decision on January 18, 2007. (*Id*. at ¶ 14, Ex. F.) There is no record that Plaintiff appealed his conviction. (*Id*. at ¶¶ 16-17.)

The Criminal Term Office of the Kings County Supreme Court handles all filings in criminal matters. That office is separate from the County Clerk's Office where Sunshine is employed. (Aff. of Nancy T. Sunshine, at ¶ 7.) According to Sunshine, the only involvement that the County Clerk's office had in Plaintiff's case "was the ministerial duty of stamping the entry date of the document when the document was filed in the Supreme Court, Criminal Term."

(*Id*. at ¶ 8.) Furthermore, Sunshine claims that, aside from the current suit, she has had no personal involvement with Plaintiff's filings in his criminal case. (*Id*. at ¶¶ 9-10.)

On November 8, 2007, Plaintiff filed this suit under Section 1983. In it, he complains about Defendants' failures to file and forward his habeas petition and application to substitute counsel. He attributes these failures, at least in part, to the lack of "authorization for court clerks or court aides to forward pro-se applications submitted by a petitioner to attached counsel." (Pl.'s Compl. at ¶¶ 19, 21, 29-31.) Consequently, Plaintiff claims that he was precluded from: (1) applying for a substitution of counsel; (2) proceeding *pro se*; and (3) raising ineffective assistance of counsel claims for his counsel's failure to challenge a search and seizure and to raise *Brady* and *Rosario* violations. (Pl.'s Compl. at ¶¶ 21-25, 27-28.) Plaintiff seeks punitive damages of $3,000 against each defendant as well as declaratory relief including "an order declaring that plaintiff is in custody in violation of the U.S. Constitution." (Pl.'s Compl. at ¶¶ 46-51, Pl.'s Amend. Compl. at ¶ 1-2.)

## II. Discussion

Plaintiff moved for summary judgment. In support of their opposition and cross-motion for summary judgment, Defendants argue that: (1) the suit against Sunshine is improper because Plaintiff failed to allege that she had any direct involvement in the alleged conduct; (2) Plaintiff's claims are barred by qualified and quasi-judicial immunity; and (3) there was no violation of the constitutional right of access to the courts.

### a. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e). The nonmoving party must show, by affidavits or as otherwise provided in Rule 56, that there are specific issues that can only be resolved at trial. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)). An action may also be ripe for

---

[1] Although Plaintiff did not file a statement of undisputed material facts as required under Local Rule 56.1, Defendants filed a Rule 56.1 "Responding Statement" of undisputed material facts. The court does not rely solely on the statement of undisputed facts contained in Defendants' Rule 56.1 statement. Rather, the court "must be satisfied that the citation to the evidence in the record supports the assertion." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co*., 373 F.3d 241, 244 (2d Cir. 2004). Therefore, the court deems admitted only those facts that are supported by admissible evidence and not controverted by the record. Furthermore, the court liberally reviews *pro se* submissions to raise the strongest arguments that they suggest. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal citations and quotation marks omitted).

summary judgment where an issue presented is solely a matter of law. *Woodard v. Mennella*, 861 F. Supp. 192, 196 (E.D.N.Y. 1994).

### b. Access to the Court Claim Pursuant to Section 1983

Under 42 U.S.C. § 1983, "every person who, under color of any statute . . . subjects . . . any . . . person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." In order to maintain a Section 1983 action, the injured party must allege (1) "that some person has deprived him of a federal right," and (2) "that the person who has deprived him of that right acted under color of state . . . law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Action taken under color of state law includes the "misuse of state power" that a wrongdoer "possesses by virtue of state law" and acting while "clothed with the authority of state law." *United States v. Giordano*, 442 F.3d 30, 42-43 (2d Cir. 2006) (citations omitted).

The constitutional right at issue here is a state inmate's right to access the courts. It is well established that, under the First and Fourteenth Amendments, state prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). In order to state a valid denial of access claim under Section 1983, the plaintiff must show that the defendant acted deliberately and maliciously to deprive the access, and as a result of such deprivation, the plaintiff suffered actual injury. *Lewis*, 518 U.S. at 349-55; *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987); *Odom v. Poirier*, 99 Civ. 4933, 2004 WL 2884409, at *8 (S.D.N.Y. 2004) (citations and internal quotation marks omitted).

Actual injury does not refer to the denial of access itself but instead, to the underlying claims that the plaintiff could have brought if he had not been denied access. *See Christopher v.*

*Harbury*, 536 U.S. 413, 415 (2002) (explaining that the right to access the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."). The Supreme Court in *Lewis* cautioned that "the [actual] injury requirement is not satisfied by just any type of frustrated legal claim" but requires the claim to be "an arguable" claim and not a "frivolous claim." 518 U.S. at 353, 354 n.3. Therefore, the plaintiff must describe the underlying cause of action "well enough to apply the nonfrivolous test and show that the arguable nature of the underlying claim is more than hope." *Christopher*, 536 U.S. at 416 (internal quotation marks and footnote omitted). "[T]he complaint should state the underlying claim in accordance with the Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id*. at 417-18 (footnote omitted).

The plaintiff can only show actual injury by alleging facts demonstrating that the defendant's behavior "materially prejudiced a legal action he sought to pursue." *Smith v. O'Conner*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995). Conduct that merely delays a plaintiff's ability to work on a pending cause of action or communicate with the courts does not amount to a violation of the right to access. *Jermosen v. Coughlin*, 89 Civ. 1866, 1995 WL 144155, at *4 (S.D.N.Y. Mar. 30, 1995). Similarly, a plaintiff does not suffer a constitutional deprivation of access if he has other available avenues to bring his grievances before the court. *See Snyder v. Nolen*, 380 F.3d 279, 292-93 (7th Cir. 2004) (Easterbrook, J., concurring in part and concurring in the judgment).

### i. Deliberate and Malicious Intent

Plaintiff has not provided admissible evidence to show that Defendants acted with the required deliberate and malicious intent. Indeed, Plaintiff does not allege anything with respect

to the intent of Defendants. His papers merely repeat how Defendants' failures to file, forward, and maintain proper safeguards denied him access to the courts. These facts, without more, show that, at most, Defendants acted negligently in failing to timely file and forward Plaintiff's applications. They do not show that Defendants acted with the intent to deprive Plaintiff of access to the courts. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("We conclude that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."); *Snyder v. Nolen*, 380 F.3d 279, 291 n.11 (7th Cir. 2004) ("[A]n allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts.") (citations omitted); *Jordan v. Fox, Rothchild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994) (same). In fact, there is nothing in any of the submissions that even remotely suggests that any of Defendants had a motive to refuse to process his two motions. This is especially apparent with Sunshine, who prior to this lawsuit, was not involved with Plaintiff's criminal matter.

### ii. Actual Injury

Plaintiff has not shown that he suffered an actual injury or that Defendants' conduct materially prejudiced a legal action. The undisputed evidence shows that although his trial court did not address his substitution of counsel motion, the Kings County Supreme Court did consider and decide the merits of the application when Plaintiff moved for an order pursuant to CPL § 440.10 to vacate his conviction. (*See* Aff. of James Imperatrice at ¶ 13, Ex. E.) In that motion, Plaintiff argued that his conviction must be vacated because the trial court had failed to inquire into his motion for reassignment of counsel. (*See id*.) The court found the motion to be entirely baseless in light of: (1) Plaintiff's letters indicating his satisfaction with his attorney; (2) Plaintiff's failure to raise any complaints about his attorney outside of the motion despite

having other opportunities to do so; and (3) the meaningful representation provided by his counsel. (*Id.*) Responding to Plaintiff's complaint that the trial court should have inquired into his application prior to his conviction, the court held that "even though it would have been better for the motion to have been brought to the court's attention, had it come before the court, it is clear that it would have been denied." (*Id.*) Given that the court considered and decided his substitution motion, it is clear that Plaintiff was not denied access to the court on this underlying claim. Moreover, in light of the court's ruling on the merits of his motion, it is apparent that any interference that might have occurred did not result in material prejudice. *See Hikel v. King*, 6591 F. Supp. 337, 340 (E.D.N.Y. 1997).

Plaintiff also claims to have suffered actual injury from the trial court's failure to consider his substitution of counsel application because that deprivation somehow denied him "access to the courts to pursue judicial review of a constitutionally established legal claim of ineffective assistance of counsel . . . for failing to challenge search and seizure . . . [and] for failing to raise a violation of *Brady* and *Rosario*." (Pl.'s Compl. at ¶¶ 23-25.) This is entirely baseless. As far as the court can tell, Plaintiff never raised these ineffective assistance of counsel claims in his application for reassignment of counsel. (*See* Pl.'s Mot. for Summ. J. at Ex. A-1.) In fact, it appears that Plaintiff raised these issues for the first time in his submissions to the court in an effort to buttress his Section 1983 action. This is inappropriate. Plaintiff cannot invent frustrated legal claims for a Section 1983 denial of access suit because the harm suffered must be an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).

Even if Defendants did interfere with his ability to bring such claims, Plaintiff has not alleged any facts in his complaint that would allow the court to determine whether the claims are "nonfrivolous." Plaintiff has also not provided the court with any details about his February 8,

2006 habeas petition other than the fact that he made such a petition under state law. As such, the court cannot determine whether those underlying claims pass muster under the *Lewis* requirement that the frustrated claim be "arguable" and not "frivolous."

### iii. Other Available Avenues to Raise Concerns with the Court

Even assuming that Defendants did improperly fail to process Plaintiff's motions, he still would not prevail for another reason: he had other avenues, which he did not take, to remedy the alleged misconduct. *See Cliff v. Brownstein*, 96 CV 1591, 1997 WL 778785, at *4 (E.D.N.Y. Dec. 15, 1997) (finding that, even if the plaintiff was denied access by the court clerk, he still did not suffer actual injury because he had other options to file his writ but chose not to do so); *Snyder*, 380 F.3d at 292 ("A forum that offers an opportunity to be heard before a decision becomes final provides due process of law."). In *Snyder*, the Seventh Circuit thoroughly addressed this very issue involving a state inmate who brought a Section 1983 action against the court clerk for refusing to file his pleadings. *See* 380 F.3d at 292. Although the Seventh Circuit agreed that the clerk wrongly had refused to file the motion, it nonetheless held that there was no constitutional violation. *See id*. at 292-93. Judge Easterbrook explained that "[e]ach litigant's opportunity to protect his interests within the case itself . . . means that the clerk's error does not deny anyone access to the courts." *Id*. at 293 (internal quotation marks omitted). Despite the clerk's error, "Snyder could have asked a judge to direct Nolen to file the pleading. That option provides ready access to the courts." *Id*.

Like the plaintiff in *Snyder*, Plaintiff had other options. According to Plaintiff, the failures to file and forward his two motions to his attorney occurred several weeks before his trial. From when he filed his motions to his conviction, Plaintiff could have asked the trial judge to direct the court staff to file and forward his submissions to his attorney. *See, e.g.*, *Hyman v.*

*Hyman*, 56 A.D.2d 337, 339, 392 N.Y.S.2d 455, 457 (1st Dep't 1977) (granting the respondent's motion for an order directing the Clerk of the Court to file her reply papers). During this period, at the very least, he could have sent a letter to the court inquiring about the status of his motions. The undisputed evidence shows that Plaintiff was present for every court appearance from arraignment through trial yet he did not renew his complaints about his attorney or inquire about the status of his motions with the trial judge. (*See* James Imperatrice Aff. at ¶ 15, Ex. E ("Defendant does not claim, and there is no indication in the court file, that he renewed his complaints about counsel during or after the pendency of the hearings and trial.").)

Assuming that Defendants failed to forward his motions to his attorney, Plaintiff has not explained what, if anything, would have prevented him from giving the submissions directly to his attorney at the pretrial hearings or during the trial itself. Even if there was some regulation that prevented him from carrying his papers to court, surely, during either the hearings or trial, Plaintiff could have inquired with his attorney on the status of the motions. He also could have petitioned the trial judge to direct the clerk of the court to forward his motions. There is no evidence that he took any of these steps.

Even accepting Plaintiff's argument that, somehow, the alleged misconduct hindered his ability to raise the ineffective assistance claims relating to search-and-seizure, *Brady*, and *Rosario* issues, Plaintiff does not claim that he was prevented from appealing his conviction on these grounds. In fact, the undisputed evidence shows that he did not appeal his conviction. His failure to take advantage of the numerous remedies available to him defeats his denial-of-access claim. *See Snyder*, 380 F.3d at 293 ("Access neither implies nor ensures an error-free

process. . . . Electing to let the blunder stand without protest does not bootstrap a mistake into a constitutional violation.").[2]

### c. Involvement of Sunshine

Defendants urge the court to dismiss the action against Nancy T. Sunshine, the Kings County Clerk of the Court, because Plaintiff's "motion for summary judgment as well as his amended complaint fail to set forth any facts which, even if read by the court in the most liberal manner, would establish that Nancy T. Sunshine was personally involved in the alleged violation of plaintiff's constitutional rights." The court agrees. In order to sustain a Section 1983 claim against individual defendants, the plaintiff must establish their personal involvement in the alleged misconduct. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). With respect to a supervisory defendant, the Second Circuit has ruled that:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted). This test was applied in closely analogous circumstances where a *pro se* inmate brought a Section 1983 suit against the Chief Clerk of the Supreme Court of Kings County for failing to file his petition for a writ of habeas corpus. *See Woodard v. Mennella*, 861 F. Supp. 192, 198 (E.D.N.Y. 1994). The court

---

[2] Plaintiff's *pro se* status does not excuse him from failing to use the available corrective measures. As the *Snyder* court emphasized, a plaintiff's lack of counsel and "status as a legal amateur does not, however, excuse his failure to take the steps provided or required by the judicial system. His ignorance of the right way to proceed certainly does not support an award of damages against the clerk of the court." 380 F.3d at 292.

dismissed the denial of access claim against the Chief Clerk, in his individual capacity, because "a supervisory official cannot be held liable under § 1983 on a theory of respondent superior." *Id.* (citations omitted).

Here, Plaintiff's suit against Sunshine is based entirely upon her alleged "fail[ure] to implement safeguards to insure" that *pro se* motions are properly processed. (Pl.'s Compl. at ¶¶ 29-31.) Even if construed liberally, Plaintiff's submissions include no facts to indicate that Sunshine engaged in any affirmative acts, gross negligence, or was informed of anything pertaining to the filings in his criminal case. To the contrary, Sunshine's affidavit explains that prior to this suit, she had no involvement with Plaintiff's criminal proceedings. (Nancy T. Sunshine Aff. at ¶¶ 9-10.) Plaintiff does not dispute this. His suit against Sunshine appears to rest solely upon her supervisory role within the Clerk's Office. This is not enough to sustain a Section 1983 action. *See Colon*, 58 F.3d at 874 ("The bare fact that Coughlin occupies a high position in the New York prison hierarchy is insufficient to sustain Colon's claim.") (citations omitted); *see also id.* at 198.

### d. Declaratory Relief

Even if Plaintiff was able to establish a violation of his right to access the courts, the court must still grant summary judgment for Defendants on his requests for declaratory relief. With the sole exception of his request for punitive damages, all of Plaintiff's "prayer[s] for relief" seek declaratory relief. (Pl.'s Compl. at ¶¶ 46-51, Pl.'s Am. Compl. at ¶ 2.) Specifically, Plaintiff asks the court to declare that Defendants' conduct and the practices of the Kings County Supreme Court violate the Constitution as well as federal and state law. Additionally, Plaintiff wants the court to declare that he is in custody in violation of the Constitution. The court lacks the authority to grant such relief for at least three reasons. First, it appears that, in asking the court to

declare Defendants' conduct unconstitutional, Plaintiff is in essence urging the court to order the Kings County courts to institute "procedural safeguards . . . to protect the rights of the petitioner." (Pl.'s Compl. at ¶ 49.) To the extent that he seeks such relief, the principles of federalism and comity prohibit the court from doing so. *See Wallace v. Kern*, 481 F.2d 621, 622 (2d Cir. 1973), *cert. denied*, 414 U.S. 1135 (1974) ("[U]nder the principles known as comity a federal district court has no power to intervene in the internal procedures of the state courts.") (citations omitted); *Woodard*, 861 F. Supp. at 199. In *Woodard*, the plaintiff also requested the court to declare that the failure of the state court clerks to file his *pro se* habeas petition violated his constitutional rights. The court held that "[w]ith respect to plaintiff's claim for declaratory relief, the court finds that defendants are entitled to summary judgment on this claim under principles of comity and federalism." 861 F. Supp. at 199. The declaratory relief that Plaintiff seeks is indistinguishable.

Second, the Eleventh Amendment bars a declaratory judgment that Defendants' conduct and policies violate state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). In *Pennhurst*, the Supreme Court found that under the Eleventh Amendment, federal courts do not have jurisdiction over suits against state officials that allege violations of state law because "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Id.* In *Woodard*, the court applied *Pennhurst* to the failure of the state court clerks to file motions and held that "the Eleventh Amendment bars plaintiff's action to the extent that he seeks a declaratory judgment that defendants' acts and policies violated *state* law." 861 F. Supp. at 196 (emphasis in original). Furthermore, Section 1983 is not the proper vehicle to seek such relief because it only

provides relief for violations of the rights secured through the Constitution or federal law. 42 U.S.C. § 1983.

Finally, in deference to Plaintiff's *pro se* status, the court liberally interprets his prayer for a declaration that he "is in custody in violation of the U.S. Constitution" as a habeas petition under 28 U.S.C. § 2254(b). Such a petition must fail because none of his custodians are defendants and thus, the Court does not have jurisdiction over the petition. *See Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 948 (2d Cir. 1976). Furthermore, it does not appear that Plaintiff has exhausted the available remedies in state court. *See Preiser v. Rodriquez*, 411 U.S. 475, 489-90 (1973) (explaining that a state prisoner may not circumvent the exhaustion requirements for habeas corpus relief by requesting such relief under Section 1983).

### III. Conclusion

Plaintiff does not have a viable denial of access claim. Defendants did not act with malicious and deliberate intent nor did Plaintiff suffer actual injury. Moreover, he had other available avenues to raise his concerns with the court. Plaintiff cannot sustain his claim against Sunshine since she was not personally involved with the alleged misconduct. Under the Eleventh Amendment, principles of federalism and comity, and Section 1983, the court lacks the authority to grant the declaratory relief that he seeks. In light of these conclusions, it is unnecessary for the court to decide whether Defendants are protected by qualified and quasi-judicial immunity. In accordance with the foregoing, Plaintiff's summary judgment motion is denied in its entirety. Defendants' cross-motion for summary judgment is granted in its entirety, and this action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
　　　 March 19, 2009

　　　　　　　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　　DORA L. IRIZARRY
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge